### BERRY *v.* HART et al.

PLEADING IN TRESPASS —*justification by officer.* In trespass *de bonis* against an officer, if he justify under a writ of attachment, he must aver return of the writ.

SAME —*justification by plaintiff in attachment.* But this rule is not applicable to the plaintiff in the attachment suit.

EVIDENCE — *official character of sheriff.* Whatever rule may be enforced against an officer justifying under process, it seems to be sufficient for third persons to show that he is an officer *de facto,* and a plaintiff in attachment who is sued in trespass is not bound to show that the sheriff who levied the writ was an officer *de jure.* It is sufficient for him to show that the sheriff was performing the duties of the office and generally recognized in it.

JUSTIFICATION *by plaintiff in attachment.* If a plaintiff in attachment is sued in trespass by a stranger to the proceeding he need not aver the ground upon which the attachment was issued.

And if the ground of the attachment is set out in the plea, it is not necessary to support it at the trial.

AGENT — *authority of clerk in a store.* A clerk left in charge of a store during the absence of his principal, with instructions to do the best he can, has no authority to sell the entire stock valued at upwards of $10,000 to a single creditor of his principal to satisfy a debt of less than $7,000.

AGENT'S AUTHORITY — *may be attacked by creditor of the principal.* A creditor of the principal may attack a sale made by an agent, upon the ground that the agent was without authority to make it, but a mere stranger cannot be allowed to interfere between principal and agent.

*The creditor must prove a debt* and legal process against the principal in the same manner as one who seeks to avoid a sale under the statute of frauds and for the same reason.

*Appeal from District Court, Gilpin County.*

TRESPASS *de bonis asportatis* against Isidore H. Kastor, William Z. Cozens and appellant. Cozens and appellant

pleaded the general issue ; afterward Cozens pleaded
specially that he was sheriff of Gilpin county ; 6th May,
1867, a writ of attachment came to his hands issued out of
the district court of Gilpin county, at the suit of Kastor &
Berry, and against Oliver S. Buell, and directed to him to
execute, commanding him to attach so much of the estate
of Buell as should be of value sufficient to satisfy the sum ·
of $659.25 and costs, etc.; that he levied the said writ on the
goods and chattels in the declaration mentioned, as the
property of said Buell, and that said goods and chattels
were the property of the said Buell at the time when, etc. ;
that the levying of said writ was the trespass complained
of, etc.    Appellant filed the following special plea :

And the said defendant, Julius Berry, by Royle &
Butler, his attorneys, for a further plea in this behalf by
leave of the court, for this purpose first had and obtained,
says *actio non* because he says that on the 6th day of May,
A. D. 1867, at the county of Gilpin aforesaid, and before
the committing of the said trespasses above laid to the charge
of the defendants herein, he and one Isidore H. Kastor were
partners, doing business at the city of Denver, to wit, in
the county of Gilpin aforesaid, under the firm-name and
style of Kastor & Berry, and that one Oliver S. Buell, who
did business under the name and style of O. S. Buell & Co.
at the said county of Gilpin, was indebted to the said Kastor
& Berry in the sum of $659.25, and that the said Buell was
then and there converting his property into money, with
the intent of placing the same beyond the reach of the said
Kastor & Berry.    And defendant avers that on the said 6th
day of May, A. D. 1867, and before the committing of the
said supposed trespasses, at the county aforesaid, he made
and filed his affidavit in the clerk's office of district court
of said Gilpin county, which affidavit was duly subscribed
and sworn to before an officer authorized to administer oaths,
in which affidavit he alleged that the said Buell was indebted
to the said Kastor & Berry in the sum of $659.25, and that
the said Buell was converting his property into money with
the intent of placing the same beyond the reach of the said

Kastor & Berry, and that he was otherwise disposing of his property, with the intent of placing the same beyond the reach of the said Kastor & Berry ; and that said defendant then and there made a good and sufficient bond with good and sufficient surety, and filed the same with the said clerk of the said district court of Gilpin county. And defendant further avers that, on the day and year aforesaid, at the county aforesaid, and before the committing of the said supposed trespasses, upon the filing of the affidavit and bond in the said clerk's office of the district court of Gilpin county, a writ of attachment was issued by the said clerk of said district court at the suit of the said Kastor & Berry against the estate of the said O. S. Buell, and that, on the said 6th day of May, A. D. 1867, at the county aforesaid, the defendant caused the said writ of attachment to be delivered to William Z. Cozens, who was then and there the sheriff of said Gilpin county, which said writ of attachment commanded the said sheriff of Gilpin county to attach so much of the estate, real and personal, of the said O. S. Buell, to be found in the said county of Gilpin, as should be of value sufficient to satisfy the sum of $659.25 and costs, and such estate so attached in his hands to secure so as to provide that the same might be liable to further proceedings thereupon, according to law, at a court to be holden at the city of Central for the said county of Gilpin, upon the second Tuesday of July, A. D. 1867, so as to compel the said O. S. Buell to appear and answer the complaint of the said Kastor & Berry, which said writ of attachment was then and there in full force and effect, and not discharged or satisfied ; and which said writ of attachment was directed to the said Cozens, as sheriff of said Gilpin county, to execute, and that the said Cozens, as such sheriff as aforesaid, by virtue of the said writ of attachment, and by the aid and direction of defendant, did, on the 6th day of May, A. D. 1867, at the county of Gilpin aforesaid, in the life-time of the said writ of attachment, take the said goods and chattels in the said declaration mentioned, and levy upon the same, by virtue of the said writ of attachment, as the property of the

said O. S. Buell ; and the defendant avers that the said goods and chattels in the said declaration mentioned were the property of the said O. S. Buell and were subject to attachment, without this, that the property of the said goods and chattels in the said declaration mentioned, or any part thereof, at the said time when, etc., was in the plaintiffs, as by the said declaration is above supposed, which are the said supposed trespasses in said declaration mentioned and none other. And this the said defendant is ready to verify, wherefore he prays judgment, etc.

In several replications the plaintiffs below denied the material facts alleged in these special pleas.

At the trial Philip M. Martin testified that he knew the Harts and Cozens and Berry and perhaps Kastor, and did know them in May, 1867. I was called on by Mr. Cozens to invoice the goods he had taken ; they were in plaintiffs' store on Main street, Central City, Gilpin county, Colorado ; Orlando North assisted us in invoicing ; they were taken from the store by Cozens ; Hart, Wiggins & Co. were doing business here at that time ; John Q. Hart was their agent ; I have the invoice list which we made ; Cozens saw and examined it, and said it was correct ; he told us to invoice the goods at the prices laid down here ; Hart told him not to take the goods away, that they were the property of Hart, Wiggins & Co. ; the list I hold in my hands is correct ; the goods were valued at $4,017 ; Cozens saw the footings up ; he said he got a copy from North and that it corresponded with mine ; I was selling goods at that time ; have been in that business for twenty-one years ; have been in business here since 1861. If the goods had been carefully managed they might bring the invoice price ; I think they consisted of hats, caps, sacks, coats, etc. I saw Mr. Berry about there at that time, once in front of the store. The goods were taken in the county ; Cozens removed the goods from the store ; he boxed them up and took them away.

The plaintiffs then offered in evidence the list referred to by the witness, and the court admitted it.

Cross-examination : Did Cozens take the goods as an

officer? Question was objected to by plaintiffs. Court sustained objection and refused to allow witness to answer. *Defendants excepted.*

Cozens said he had to do his duty; don't recollect whether he said he had to do his duty as an officer; Hart, Wiggins & Co. had been in business here from four to six days before this; the sale from Buell to Hart, Wiggins & Co. was made in Buell's store; it was agreed between Hart and Cozens that North and I should make the invoice, I think; my understanding was that Hart bought the goods from Oliver Buell; Buell was not here at that time; they were sold by his agent Sherman; Sherman was his agent; I understand that he had authority.

The following question was then asked: Do you know, of your own knowledge, whether Sherman had authority to make the sale? to which plaintiffs objected, and court sustained objection. *Defendants excepted.*

Witness then testified: I have been the agent of Hart, Wiggins & Co. since that time in this territory, in this as well as other matters; Hart was their agent at that time.

Charles C. Post testified that he knew defendants and knew of plaintiffs; the plaintiffs were doing business here on 6th of May; I knew of Julius Berry and Cozens taking the goods of plaintiffs from their store on Main street, in the store now occupied by P. C. Johnson; it was on the 6th of May, 1867; they were putting them into boxes; I saw them roll them out of the store in boxes.

Cross-examination: Berry was working there, taking goods down and helping to pack them; I was there as attorney for Hart, Wiggins & Co.

Defendants then asked: What did Cozens say about the taking, if any thing, at any time during the taking?

Plaintiffs objected, and court sustained objection. *Defendants excepted.*

The following question was then asked: Do you know whether Cozens claimed to take the goods by virtue of a writ of attachment in his hands as an officer?

Plaintiffs objected, and court sustained objection. *Defendants excepted.*

Plaintiffs thereupon closed their case.

Defendant introduced Charles E. Sherman, who testified that he knew the agent of Hart, Wiggins & Co.; I knew Oliver S. Buell in April and May, 1867; he had been in the clothing business just before that time, in the place now occupied by Clark & Sweet, as a tobacco store; he was there at least a year in the same kind of business; I commenced clerking for Buell in that place some time in December, 1866, and continued about five months; while Buell remained here, I was his clerk; when he was gone I had full charge of his business; he went east in 1867; he did business under the name and style of O. S. Buell & Co.; Buell composed the firm; there was no other member to my knowledge; he remained east about a couple of months; I conducted his business during his absence; he did not give me any written authority; he gave me full charge of his business, and told me to do the best I could for him, and what I thought was best; he went east to visit his friends and buy goods, to continue his business; he returned on the 4th of May, 1867, I think; the business was closed on the 29th of April, 1867; the firm sold the goods to Hart, Wiggins & Co.; I sold them as the agent of Buell; the value of the goods sold was somewhere between $10,000 and $11,000; the sale paid the debt of Buell to Hart, Wiggins & Co.; I think the amount of the debt was somewhere between $6,000 and $7,000 with interest; there was no other consideration besides that; they did not pay me any money on the transaction, they gave me no notes or security; Buell never gave me any particular authority to make the sale to Hart, Wiggins & Co.; he gave me general authority; I think O. S. Buell & Co. were indebted to Kastor & Berry; I don't know whether Hart knew or was informed at the time of the sale, that O. S. Buell & Co. were indebted to Kastor & Berry; O. S. Buell & Co. were also indebted to Berry, Hexter & Co., and Deitsch & Bro., in Denver; I don't know whether Hart

knew of the indebtedness to the Denver folks; the sale from Buell to Hart, Wiggins & Co. included one account, and perhaps more, but no note.

Cross-examined: I had authority from Buel to take charge of his business and do the best I could.

Defendants then offered to prove by H. H. Atkins "that he knew who was sheriff of Gilpin county during the month of May, 1867, and for two or three years previous; that he had good means of knowledge, because he was clerk of the district court of said county, and frequently had business with said sheriff; that William Z. Cozens was sheriff in said month of May, and had been for a long time previous; that he was recognized as such by the district court of said county, by public officers, and by the public generally, and that his right to hold and exercise the duties of said office was not disputed."

To which plaintiffs objected, and the court sustained said objection. *Defendants excepted.*

Defendants then offered the affidavit, bond and writ of attachment, and the return of the sheriff indorsed on said writ in the suit of Kastor and Berry against O. S. Buell, and upon plaintiffs' objection the court excluded them.

The jury found for the plaintiffs $4,017.

Messrs. ROYLE & BUTLER, and Messrs. CHARLES & ELBERT, for appellant.

Messrs. JOHNSON & TELLER, for appellees.

HALLETT, C. J.  The issues in this case were not the same as in the case of *Deitsch* v. *Hart et al., post,* 300, decided at this term, although appellant's evidence was substantially the same as that offered by Deitsch. In that case, the special plea was found to be substantially defective, and, therefore, the justification failed. In this case, appellant's plea, although, perhaps, it would have been obnoxious to demurrer, is, in our opinion, sufficient after issue joined.

It is said, that appellant should have alleged that the writ of attachment had been returned, and such is the rule

when an officer attempts to justify under a writ of this kind. *Davis* v. *Bush*, 4 Blackf. 330.

But we have found no case in which this rule has been applied to the plaintiff in the writ, and, upon principle, there appears to be no reason for extending it to him. It is the duty of the officer to return the process at the proper time, and he may well be required to perfect his levy by making return, if, at the time of pleading, the return day has passed. The plaintiff in the suit, however, ought not to be charged on account of an omission of the officer occurring after the alleged trespass was committed. If appellant is guilty of a trespass, he became so by suing out the attachment and directing it to be levied, and the circumstance that the officer failed in his duty after the levy will not affect his rights, unless he was in some way responsible for the omission. In *Middleton* v. *Price*, 2 Strange, 1184, the plaintiff in the writ and the officer jointly justified. "And it not being shown that any return was made, the court held, that the officer was a trespasser *ab initio*, and that the plaintiff, by joining with him in the plea, is equally affected by the defect of it."

If they had pleaded separately, probably the plaintiff would not have been held liable for the officer's default.

The plea being sufficient after issue joined, the question most discussed at the bar is the admissibility of the evidence offered in the court below to show the official character of the sheriff. It is conceded that the acts of officers *de facto* are valid, when they concern the public or the rights of third persons, who have an interest in the act done. *People* v. *Collins*, 7 Johns. 549.

The appellant was in no way connected with the sheriff, except that he procured his services in levying the writ of attachment. Desiring to enforce payment of his debt against Buell, appellant sued out process, and, if he found Cozens performing the duties of sheriff, and generally recognized as such officer, we think that he might accept his services without further inquiry as to the tenure by which the office was held. Certainly no question as to the

validity of the levy, predicated upon Cozens' title to the office, can arise between Buell and appellant, and, *a fortiori*, no such question ought to be allowed between appellant and appellees. The circumstance, that Cozens and appellant were sued jointly, can make no difference since they severed in pleading. Whatever rule may be enforced against an officer justifying under process, it seems to be sufficient for third persons to show that he is an officer *de facto*, and the evidence offered by appellant tended to prove this fact, and was, therefore, improperly rejected. From this it follows, that the affidavit in attachment and the writ and return were also excluded improperly.

And here I might pause in the discussion of this cause, but for the suggestion of counsel that the verdict must have been the same if all the evidence excluded upon the trial below had been admitted. This suggestion rests upon an alleged absence of proof upon two points in appellant's defense. In the special plea the ground upon which the attachment was issued is set out, and it is claimed that there is no evidence to support it. But we think that the allegation itself is not material in this action and must be disregarded. In *Damon* v. *Bryant*, 2 Pick. 411, the reason given for requiring an officer to prove a debt in cases of this kind is, that it may appear that he is acting for a creditor because it is only in that character that he can question the vendee's title to the goods.

It is plain that a creditor, when justifying a seizure out of the hands of a stranger, must show his debt upon the same reason. Proof of the relation of debtor and creditor establishes the right of the creditor to proceed against the property of the debtor wherever it may be found, but whether he shall proceed by attachment or ordinary summons is a question of no importance to any other than the parties to the suit. If the debtor should bring trespass against the creditor, there would be strong reason for requiring the creditor to show that there was cause for issuing the attachment because the debtor may question the remedy as well as the right. But a stranger to the process is in a different

position.  As to him it is sufficient for the creditor to show his debt, and that he has resorted to legal process for its collection.

It is also urged that appellant failed to show that the sale from Buell to appellees was fraudulent, and therefore the title of the latter parties must be held good. It is to be observed, however, that appellant was not confined to that method of showing title in Buell. It seems that Buell was a merchant, and that he went east to buy goods, and visit his friends, leaving Sherman, his agent, in charge of his business, and that during his absence Sherman sold his whole stock of goods to appellees for the purpose of paying Buell's indebtedness to them. The value of the goods was upwards of $10,000, and the indebtedness of Buell to appellees was less than $7,000. It is difficult to maintain the authority of the agent to make this sale, for if it is conceded that Sherman had authority to sell the whole stock of goods in mass at two-thirds of their value, which is all that can be claimed upon the testimony, there is nothing to show that he had any authority whatever to pay debts. Sherman says that Buell gave him full charge of the business and told him to do the best he could. Giving to this authority the utmost latitude, Sherman had power to sell goods and perhaps pay current expenses, and the sale of the whole stock to a single creditor to satisfy one debt was entirely beyond the scope of his employment. *Nash* v. *Drew*, 5 Cush. 422 ; *Swett* v. *Brown*, 5 Pick. 178 ; *Beals* v. *Allen*, 18 Johns. 365.

Appellant had the right to have this question submitted to the jury under proper instructions, but he could not do so except in connection with the other evidence in the case. In this view it was not necessary that he should rely upon fraud in the sale from Buell to appellees, because if the jury should find that Sherman had no authority to pay the debt to appellees, and there had been no ratification of the act, the title was still in Buell and the property was subject to attachment under a writ running against him. That appellant was in a position to question the sale from Buell to

appellee, upon the insufficiency of Sherman's authority to make it, is decided in the case of *Beals* v. *Allen,* cited above.

It seems that a stranger, who seeks to attack a sale upon the want of authority in the agent by whom it was made, must show a debt and legal process against the principal in the same manner as one who seeks to avoid a sale under the statute of frauds, and, for the same reason, a mere stranger cannot be allowed to interfere between principal and agent. *Jackson* v. *Van Dalfsen,* 5 Johns. 44.

It was necessary for appellant to show privity between himself and Buell before he could attack the sale made by Sherman, and for this purpose the evidence of indebtedness and process, and the official character of the sheriff was material to his defense. Upon this ground, also, this case is to be distinguished from that of *Dietsch* v. *Hart et al.,* in which there was no sufficient plea of justification under which the appellant could attack the sale from Buell.

There are other questions in this record which probably will not arise in another trial of the cause, and, therefore, they are not noticed.

The judgment of the district court is reversed, with costs, and the cause is remanded for a new trial.

*Reversed.*